[S. F. No. 2586.    Department One.—December 19, 1902.]

FRED L. HILMER et al., Appellants, v. AUSTIN H. HILLS et al., Respondents.

ACTION FOR CONVERSION—OWNERSHIP OF GOODS—EXECUTORY CONTRACT OF SALE—TITLE NOT PASSED.—An action for conversion will not lie in favor of plaintiffs who have no ownership or right of possession in the goods alleged to have been converted, but who have a mere executory contract of sale thereof, under which the title has not passed to them.

ID.—SALE FOR CASH ON DELIVERY—TITLE IN VENDOR.—Upon a sale of goods for cash on delivery, as distinguished from a sale on credit, the title and right of possession of the goods remains in the vendor until the cash is paid.

ID.—BILL OF LADING—NAMING OF CONSIGNEES—INTENTION AS TO TITLE. —The fact that the plaintiffs in the action for conversion were . named as consignees in the bill of lading did not have the effect to pass title to them, in view of evidence clearly showing a contrary intention.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

Mullany, Grant & Cushing, for Appellants.

The vendee being named in the bill of lading, the title vested in him upon delivery to the carrier for shipment.

(Tiedeman on Sales, sec. 89; *Farmers' Phosphate Co.* v. *Gill,* 69 Md. 537; [1] *Wigton* v. *Bowley,* 130 Mass. 252; *Neimeyer Lumber Co.* v. *Burlington,* 54 Neb. 321; *Scharff* v. *Meyer,* 133 Mo. 428; [2] *Tufts* v. *Griffin,* 107 N. C. 47; [3] Newmark on Sales, sec. 752; Usher on Sales, sec. 232; Porter on Bills of Lading, sec. 485; Benjamin on Sales, Am. Not. 7th ed., p. 373.)    The vendor has a mere lien for the price, the title being in the vendee whether delivery is conditioned on payment or not. (*Tufts* v. *Griffin,* 107 N. C. 47; [3] *Hayden* v. *Demets,* 53 N. Y. 426-431; *Bissell* v. *Balcom,* 39 N. Y. 275-279; Civ. Code, secs. 1751, 3049.)

M. S. Eisner, Reinstein & Eisner, and Myrick & Deering, for Respondents.

The sale having been made for cash on delivery, the title did not pass until payment was made.    (21 Am. & Eng. Ency. of Law, pp. 637, 638, 645; Benjamin on Sales, 6th ed., secs. 252, 308, 318, 362, 592; *Empire State F. T. Co.* v. *Grant,* 114 N. Y. 43, 44; *Lange* v. *Prisch,* 30 N. Y. Supp. 220; *Sanborn* v. *Shipherd,* 59 Minn. 144; *Bergan* v. *Magnus,* 89 Ga. 514; *Burditt Bros.* v. *Howe,* 69 Vt. 363; *Bergeman* v. *I. and St. Ry. Co.,* 104 Mo. 77; *Merchants' Bank* v. *McGraw,* 59 Fed. Rep. 972; *Hall* v. *Missouri Pac. Ry Co.,* 50 Mo. App. 179; *Straus, Pritz & Co.* v. *Hirsch,* 63 Mo. App. 102-103; *Johnson, Brinkman & Co.* v. *Missouri Pac. Ry. Co.,* 72 Mo. App. 437; *Cardinel* v. *Bennett,* 52 Cal. 470; *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 215, 218; [4] *Beauchamp* v. *Archer,* 58 Cal. 434, 435; [5] *Ramish* v. *Kirschbraun,* 107 Cal. 660.)    The giving of the bill of lading in the name of the consignee is not conclusive where the sale is made for cash as a condition precedent to delivery.    (*Bunk* v. *Jones,* 4 N. Y. 497; [6] *Emery's Sons* v. *Irving National Bank,* 25 Ohio St. 360.[7])

GRAY, C.—This is an action to recover $3,565 damages for the alleged unlawful conversion of a carload of butter and eggs.    On a trial before the court without a jury the findings and judgment were in favor of defendants.    The plaintiffs

[1] 9 Am. St. Rep. 445.

[2] 54 Am. St. Rep. 672.

[3] 22 Am. St. Rep. 866, and note.

[4] 9 Am. St. Rep. 199.

[5] 41 Am. Rep. 266.

[6] 55 Am. Dec. 290, and note.

[7] 18 Am. Rep. 299.

appeal from the judgment and from an order denying them a new trial.

Appellants attack the finding of the court to the effect that the plaintiff was not the owner of the goods in question and was not entitled to the possession thereof. The facts are not in dispute but the question is, Do these facts show a sale of, the goods so far executed as to pass the title to Hilmer et al., or was there a mere unexecuted agreement for the sale thereof? The facts are, in substance, as follows: In and prior to May, 1898, the plaintiffs were doing business as commission merchants and dealers in butter and eggs in the city of San Francisco. At the same time defendants Hills Brothers were dealing in the same kind of goods, and defendant Frank E. Booth was a broker dealing in like goods in San Francisco. For some time prior to May, 1898, the plaintiffs had been buying eggs and butter from one John Stewart, of Concordia, Kansas, through defendant Booth as a broker for Stewart.

In May, 1898, plaintiff Hilmer went to the place of business of John Stewart, at Concordia, Kansas, and negotiated with Stewart about buying goods direct from Stewart. Stewart said he was willing to deal direct with Hilmer, and they negotiated about the sale of the carload of goods in suit. Prices were quoted by Stewart, and goods pointed out to Hilmer the same as or similar to those actually shipped and in controversy. Hilmer said he would wire his partners, and if prices were satisfactory he would order the goods. The freight on the shipment, if made, was to be paid by Hilmer, and he designated the Union Pacific Railway as the route of shipment. Hilmer offered to honor a sight draft for the goods, but Stewart did not require this, but stated that he would draw on Hilmer by the time the goods reached San Francisco, according to his prior custom in dealing with the firm of which Hilmer was a member. As to former dealings Hilmer testifies:—

"In our previous transactions with Stewart the goods were shipped subject to our inspection here. They were cash if the eggs were all right, which they were most always. The terms were cash on delivery if the eggs were all right. I don't think we had prior to that time received from Mr. Stewart an invoice and bill of lading at the same time. It was his custom in dealing with our firm to send an invoice ahead of the bill

of lading and draft. The bill of lading and draft came together, and when we received the bill of lading we paid the draft, after we got the eggs. They were shipped open. The bills of lading and drafts were sent through the banks; I don't know just which bank, but to some bank, and we would call and accept the draft. It was not necessary for us to get the bill of lading, because the goods were shipped open to us. In every instance in which we dealt with Mr. Stewart he sent a bill of lading with a draft attached to a bank in San Francisco, but we took delivery of the goods before we paid the draft. When Stewart shipped us goods we got them without the bill of lading. The railroad company requires a bond upon the delivery of the goods. We had given the Southern Pacific Company a bond under which we could get freight consigned to us without a bill of lading. That bond was supposed to take the place of the bill of lading. The railroad company had the right, however, if they saw fit, to call for the bill of lading."

After having discussed prices and terms of the prospective purchases, Hilmer left Concordia and went to Abilene, Kansas, and there wired his partners at San Francisco as to Stewart's prices, and, on receiving an answer directing him to buy, telegraphed to ship the goods. Stewart answered by two telegrams, in the former of which he said, "Think can ship you car; will wire positively to Manhattan," and in the latter of which, dated May 12, 1898, he stated, "Will ship you car Saturday or Monday as per your to-day's wire." On May 16, 1898, Stewart did ship the car of goods in controversy by the Union Pacific system of railways (a common carrier), and received therefor a bill of lading. The goods were transported to San Francisco, where they arrived on or about May 25, 1898. The bill of lading names Hilmer, Bredhoff & Schulz as the consignees of the goods. Stewart, on receiving the bill of lading, wrote a letter to Hilmer, Bredhoff & Schulz at San Francisco, in which he said: "Inclosed please find invoice for car shipped you yesterday as sold to your F. L. Hilmer, who was here a few days ago. After car has had sufficient time to reach there ahead of the draft, will draw on you for amount of invoice, attaching bill of lading thereto." The invoice inclosed is on a billhead of Stewart and purports to be a statement of goods bought by Hilmer, Bredhoff & Schulz

from John Stewart "terms cash." Stewart also forwarded the bill of lading thus received for the goods to Hilmer, Bredhoff & Schulz in the same letter with the invoice. This he undoubtedly did by mistake. Stewart states that although he sent the bill of lading direct by mistake, he drew a draft on Hilmer et al. on or about May 18, 1898, through the First National Bank, Concordia. This draft was never presented for payment to Hilmer et al. While the goods were in transit to San Francisco defendant Booth appears on the scene. In his deposition, taken at Concordia, Kansas, Stewart says: "When I made the sale to Hilmer it was because he told me he had a little dispute with Booth and did not care to make any purchases through him." Stewart wrote Booth, informing him that he had sold direct to Hilmer. On receipt of this letter Booth wired Stewart, demanding that Stewart divert the car to him (Booth), as he did not want Stewart to make any sales other than through him. The railroad company required a bond from Stewart to indemnify it from loss before it would divert the goods to Booth. When the goods arrived at San Francisco, Hilmer et al. demanded possession thereof from the railroad company, which was refused, and the company stated that it had already delivered the goods to other parties. The goods had in fact already been delivered to defendant Booth. Demand was made on the defendants for the possession of the goods, which was refused, and this action was thereafter commenced against Hills Brothers and Booth. No payment for the goods or for the freight was ever made or tendered by plaintiffs to Stewart or either of defendants or at all.

It seems to be conceded that the bill of lading having been forwarded by mistake the case should be treated as if the bill had been attached to the draft and forwarded with it to the bank in San Francisco, in accordance with the previous custom of the parties.

The appellant himself, as will be seen by the foregoing statement, testified to facts showing clearly that the sale was for cash, and it was so clearly understood between the parties thereto. This is apparent not only from the direct testimony of one of the appellants, but it also clearly appears from Stewart's letter inclosing the invoice. Stewart was going to forward the draft and bill of lading so that they would reach

plaintiffs about the same date of the arrival of the car. Evidently he thought that plaintiffs would require the bill of lading to get possession of the goods, and by sending it to the bank, with the draft, the payment of the price of the goods, the delivery of the bill of lading, and the receipt of the goods by plaintiff could and would all be contemporaneously accomplished. If Stewart had intended that the sale should be on credit he would have given his clerk directions to inclose the bill of lading with the invoice to plaintiffs. But one conclusion can be drawn from his act in instructing that the bill be withheld to accompany the draft. "Terms cash" was distinctly stated in the body of the invoice forwarded by Stewart, and there can be no question that Stewart intended to make the sale one of "cash on delivery." Such being the clear intention of the parties to the transaction, it is plain, as a matter of law, that no title in the goods could pass to plaintiffs until they had paid the "cash" for the goods. That this was a "cash" sale, as distinguished from a sale on credit, and that the title to the goods as well as the right of possession remained in Stewart until the cash should be paid is settled law, as will be clearly illustrated by an examination of the following citations: *Sanborn* v. *Shipherd,* 59 Minn. 144; *Burditt Bros.* v. *Howe,* 69 Vt. 563; *Cardinell* v. *Bennett,* 52 Cal. 476; *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 215;[1] *Ramish* v. *Kirschbraun,* 107 Cal. 660.

In the Minnesota case the court says: "There being no agreement of the parties to the contrary, the law presumes the sale to have been for cash; and, upon a sale for cash, payment of the purchase money and the delivery of the property are concurrent and mutually dependent acts. Neither party is bound to perform without contemporaneous performance by the other. The payment of the purchase money was a condition precedent to plaintiff's right of possession."

The fact that the goods were shipped by the carrier designated by plaintiff does not affect the question, even if we admit that such carrier was the agent of plaintiff, and that its possession was the possession of plaintiffs. In the case of *Strauss* v. *Hirsch,* 63 Mo. App. 102, the court said:—

"The vesting of the title to the goods in the purchaser may be made to depend upon his performance of some condition.

[1] 9 Am. St. Rep. 199.

And if that be the nature of the transaction, a transfer of possession before performance of the condition does not pass the title. The condition precedent which the purchaser is required to perform to acquire the title is the payment of the price. When that condition is express the title does not pass before the payment of the price, although the possession is given to the purchaser. (See also, to the same effect, *Johnson Brinkman etc. Co.* v. *Missouri Pac. Ry. Co.*, 72 Mo. App. 437, and *Empire State etc. Co.* v. *Grant,* 114 N. Y. 40.) That plaintiffs were named as consignees in the bill of lading did not have the effect to pass title in view of the evidence clearly showing a contrary intention. (*Emery's Sons* v. *Irving Nat. Bank,* 25 Ohio St. 364.[1]) Whatever remedy plaintiffs may have on the facts disclosed, certainly they cannot maintain this action, for they have utterly failed to show that any title in the property passed to them.

The judgment and order should be affirmed.

Smith, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Garoutte, J., Harrison, J., Van Dyke, J.

Hearing in Bank denied.

Beatty, C. J., and Lorigan, J., dissented from the order denying a hearing in Bank.