[Civ. No. 1611.   Third Appellate District.—May 10, 1917.]

BRINKLEY–DOUGLAS FRUIT COMPANY (a Corporation), Respondent, v. A. L. SILMAN, as Administrator, etc., et al., Appellants.

CORPORATION LAW—PLEADING—DENIAL OF INCORPORATION UPON INFORMATION AND BELIEF—ISSUE NOT RAISED.—In an action by a corporation the denial of the incorporation of the plaintiff upon information and belief is evasive and raises no issue, where the public record of incorporation was within reach of the defendant.

ID.—EVIDENCE—CORPORATE EXISTENCE.—Corporate existence may be proved by parol, and, when collaterally assailed, it is sufficient to prove a *de facto* existence.

ID.—SALE OF POTATOES—SEIZURE BY SHERIFF—OWNERSHIP BY BUYERS —SUFFICIENCY OF EVIDENCE.—In an action brought against a sheriff and the surety on his official bond for the conversion of a carload of potatoes, the ownership of the potatoes by the plaintiffs at the time of their seizure under a writ of attachment by the sheriff in an action against the plaintiffs' vendor, is sufficiently shown by proof of the loading of the same upon the car and the making out of a shipping receipt naming the plaintiffs as consignees, and the receipt of a large payment on account of the price, with assurance of the payment of the balance when the goods were ready to be shipped.

ID.—ATTACHMENT — THIRD-PARTY CLAIM — SUFFICIENCY OF DEMAND — WAIVER.—A sheriff is not permitted to question the sufficiency of the demand for the release of attached property made under section 689 of the Code of Civil Procedure, where he acts upon it and demands and receives an indemnifying bond from the claimant.

ID.—WRONGFUL SEIZURE AND SALE OF PROPERTY BY OFFICER—CONVERSION.—Conversion is the proper remedy against a sheriff who seizes and sells property of one person under process against another.

ID.—POSSESSION OF CONVERTED PROPERTY.—In an action of conversion against a sheriff, the plaintiff is entitled to recover where he proves ownership and right of possession together with its appropriation by the defendant, regardless of the fact that at the time of the conversion the property may have been in the possession of a third party.

ID.—JUDGMENT AGAINST ADMINISTRATOR—PAYMENT IN DUE COURSE OF ADMINISTRATION—CORRECTION ON APPEAL.—Error in a judgment against an administrator in not directing that it be paid in due course of administration is correctible on appeal.

APPEAL from a judgment of the Superior Court of Merced County, and from an order denying a new trial. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

F. W. Henderson, and Hugh K. Landram, for Appellants.

Edward Bickmore, for Respondent.

BURNETT, J.—The action was originally brought by plaintiff against S. C. Cornell, as sheriff of Merced County, and the Title Company as surety on his official bond, for the conversion of 280 crates of sweet potatoes. After the action was commenced Cornell died and his administrator was substituted as defendant. The complaint is in the usual form for conversion. The answer denied the corporate existence of plaintiff, that plaintiff was ever the owner of the potatoes, and denied any conversion by Cornell. As a separate defense it was alleged that defendant Cornell, as sheriff, on February 26, 1912, duly levied on said potatoes a writ of attachment issued out of the justice court in an action wherein F. H. Duarte was defendant, and at the time of said levy Duarte was the owner of and in the possession of said potatoes, and that they were afterward sold and the proceeds regularly applied to the satisfaction of the judgments obtained in that action and in another action against the same defendant. It was also alleged that the plaintiff herein never served upon defendant, Cornell, any notice of its claim to said potatoes prior to said sale, and plaintiff never at any time served upon Cornell any claim in accordance with section 689 of the Code of Civil Procedure, and never claimed any of the proceeds of said sale.

The court found that plaintiff was a corporation as alleged; that plaintiff was, on February 26, 1912, the owner and entitled to the possession of the potatoes, which were of the value of $476; that, on said day, S. C. Cornell, as sheriff, wrongfully converted the same to his own use; that the allegations in the answer in regard to the attachment and sale of the potatoes were true, but that it was not true that no claim of ownership was made by plaintiff, and, on the contrary, a demand and claim in writing was made upon S. C. Cornell prior to said sale. The court thereupon gave judg-

ment in favor of plaintiff and against defendants in the sum of $476, from which judgment the appeal has been taken.

We proceed to notice all the points made by appellants in the order presented in the opening brief.

1. Appellants are entirely mistaken in the contention that there was no evidence to prove the corporate existence of plaintiff. There is the certificate of the Secretary of State of the filing in his office of the certified copy of the articles of incorporation of plaintiff, on the back of which the following indorsement by the county clerk of Merced County appears: "No. 2644. In the Superior Court of the County of Merced, State of California. The Brinkley-Douglas Fruit Company, plaintiff, v. S. C. Cornell, et al., defendants. Certificate of filing of Articles of Incorporation. Filed, August 3, 1912. P. J. Thornton, Clerk." As pointed out by respondent, the answer of defendants was filed February 13, 1913, and the denial of the incorporation of plaintiff was upon information and belief. If it be conceded that said certificate was not sufficient evidence of the incorporation, it is at least plain that, before the answer was filed, the attention of defendants was called to a public record of incorporation and we have an instance, therefore, for the application of the principle stated by the authorities as follows: "The rule is universal that matters of public record and within reach of the defendant cannot be denied upon the ground that defendant had no information or belief concerning them." The denial of the incorporation was therefore evasive and raised no issue.

But the corporate existence may be proved by parol (*People v. Morley,* 8 Cal. App. 372, [97 Pac. 84]; *Fresno Canal etc. Co. v. Warner,* 72 Cal. 379, [14 Pac. 37]), and, when collaterally assailed, it is sufficient to prove that the corporation has a *de facto* existence. (*Fresno Canal etc. Co. v. Warner, supra.*) There is abundant evidence in the record to satisfy the foregoing requirement. Indeed, appellants make no reference to the point in their closing brief and they were probably convinced of their error.

2. A more serious contention is the next one, that "plaintiff never owned the potatoes." As to this appellants say: "Stating the case most favorably to plaintiff, it would seem that about February 20, 1912, plaintiff wrote or wired to F. K. Duarte of Turlock, Merced County, a sweet potato

dealer, for a car of 274 crates of sweet potatoes at $1.90 a crate; that at the same time plaintiff sent a check for $246.60 and stated that it would have the First National Bank of Pueblo wire the People's State Bank of Turlock that F. K. Duarte's draft for $1.00 per crate with bill of lading attached would be paid. That upon receipt of the order on February 26, 1912, Mary Duarte, daughter of F. K. Duarte, purchased the potatoes in question for her father from parties near Atwater, Merced County, and had them loaded on a Southern Pacific car. That they were loaded before 5 P. M. on the 26th and Mary Duarte made out a shipping receipt for the car which she signed for her father and the agent for the railroad company. The receipt named Brinkley & Douglas as consignees, Pueblo, Colo. Mary Duarte then took the shipping receipt and went to Turlock on the 5 P. M. train. That night F. K. Duarte wired plaintiff as follows: 'Have your bank wire People's State Bank at Turlock to advance me dollar per crate on car P. F. E. 3935 on presentation of bill of lading; there is two hundred and eighty crates in the car.' The next morning (February 27, 1912) Mary Duarte took the shipping receipt to the People's State Bank, signed her father's name to a draft on plaintiff for $280, attached the shipping receipt to the draft and gave both to the bank and thereupon received the $280. The draft was paid by plaintiff on March 5, 1912. S. C. Cornell, as sheriff, duly levied upon the car of sweet potatoes under a writ of attachment on February 26, 1912.

"It is evident from the foregoing statement that the property in the potatoes had not passed from Duarte or to plaintiff at the time of the levy of the writ of attachment. 'If the bill of lading with draft attached is sent to the seller's agent or bank for collection the property in the goods is reserved and does not pass to the buyer until payment.' (35 Cyc. 333. See, also, *Ramish* v. *Kirschbraun*, 107 Cal. 659, [40 Pac. 1045]; *Hilmer* v. *Hills*, 138 Cal. 134, [70 Pac. 1080].) "

We may notice briefly these authorities. As to the quotation from Cyc. it must, of course, be regarded, not only as an isolated sentence, but in connection with the context and the facts of the various cases cited in its support. As to this we may simply observe that the quoted sentence is followed by this statement: "A different intention may, however, be

indicated by the circumstances of the transaction and will of course control."

In the Ramish case, *supra,* the bill of lading was made to the vendors and by them indorsed to the vendee and it was agreed that it was to be delivered to the latter with the merchandise at Los Angeles "upon his payment there of the price of the eggs." It was in view of these circumstances that the court said: "There was no transfer of the title to the eggs before the bill of lading was received at the bank for delivery." It was also an important circumstance in that case that the bill of lading was not made out at Ottumwa, the shipping point, to the plaintiff or vendee but it was made to the defendants or vendors as consignees, "so that they could retain the property in the eggs in themselves until the payment of the draft by the plaintiff. Payment of the draft and transfer of the property in the eggs by delivery of the indorsed bill of lading, were intended to be, and were contemporaneous acts," as stated in the brief of respondents in that case.

In the Hilmer case, *supra,* the evidence is reviewed and it is concluded that it was clearly understood by the parties that the sale was to be for cash and the title was not to pass until the money was paid. Under such circumstances, necessarily, the title would vest contemporaneously with the payment of the money, since that was the expressed intention of the vendor and vendee. This would be so, notwithstanding possession may have been given to the vendee prior to the payment of the purchase price, and the vendee named as consignee in the bill of lading. As to this latter circumstance, *Emery's Sons* v. *Irving Nat. Bank,* 25 Ohio St. 364, [18 Am. Rep. 299], is cited, in which it was held that the fact of the bill of lading being made out to the vendee as consignee does not have the effect to pass title in view of the evidence "clearly showing a contrary intention."

It must be said, however, that the case here is quite different. The evidence does not show clearly that it was the intention of the parties that the title should not pass until all the money was paid. The circumstances already detailed are quite consistent with the theory that the title passed when the potatoes were loaded on the car and the bill of lading taken out for plaintiff. It is not unreasonable to hold that Duarte considered the money as good as paid when he made

the consignment to plaintiff, and that he intended thereby to surrender and transfer all of his interest in and right of control over said potatoes. He had received a large payment, and an assurance that the balance would be ready for him at the bank when the goods were ready to be shipped. There is no reason to believe that he distrusted the good faith of respondent, or doubted that the money would be paid as agreed. He had had prior dealings with plaintiff, and it was quite natural for him to consider the sale consummated when he loaded the car for plaintiff. It is to be remembered that we are simply considering the question whether there was room for a rational conclusion that the title passed before the attachment was levied,—in other words, whether there was any substantial evidence to support the finding of the court to that effect. We feel no hesitation in answering the question in the affirmative and, in this connection, may refer to some authorities wherein the probative force of such circumstances is declared. In *Emery's Sons* v. *Irving Nat. Bank,* 25 Ohio St. 364, [18 Am. Rep. 299], it is said: ''Where goods are delivered by a vendor to a common carrier, consigned to the vendee, the question whether the title thereby passes from the vendor to the vendee, depends upon the intention of the vendor, which intention is to be gathered from all the circumstances of the transaction. . . . In all such transactions, the bill of lading is an *important* item of proof as to the intention, but it is not necessarily conclusive of the question. If the bill of lading shows that the consignment was made for the benefit of the consignor or his order it is very strong proof of his intention to reserve the *jus dispodendi*. And on the other hand, if the bill of lading shows that the shipment is made for the benefit of the consignee, it is almost decisive of the consignor's intention to part with the ownership of the property. If the bill of lading does not disclose the person for whose benefit the consignment is made, it is of less weight on the question of the shipper's intention. We have no doubt, however, that if the bill of lading shows a consignment by vendor to vendee, and no other circumstance appears as to the intention, it will be taken as *prima facie* evidence of an unconditional delivery to the vendee.''

In *Lund* v. *Ganahl*, 22 Cal. App. 103, [133 Pac. 501], it was contended, as herein, that the title to the property was not to pass until the full payment of the purchase price, but

it was held that the circumstances were sufficient to justify the conclusion that the transaction amounted to a sale and not a mere agreement to sell, notwithstanding the purchase price had not been fully paid and no bill of sale was executed, the presumption from the transfer of possession being that the title passed, since no different intention was manifested.

We do not think it can be said that a different intention is so clearly shown by other evidence in this case as to nullify the force of the circumstances to which we referred as justifying the trial court's conclusion and to demand a reversal of the judgment. Even if the vendor or the vendee had testified positively that the intention was that the title should vest only when the entire purchase price was paid, we could not say that the trial court was bound to accord full credit to such statement, or to base the findings upon it rather than upon the rational inference from the facts already detailed. However, a reading of the testimony of Duarte and of the president of the corporation is more favorable than otherwise to the contention that the transaction was intended as a completed sale. We think their testimony naturally gives rise to the impression that they so understood it. It is true that appellants claim that Duarte testified that the sale was to be for cash. He was apparently an illiterate witness and was skillfully led by the able counsel for appellants, but the record shows that when apparently he made a statement to that effect he was testifying particularly concerning former sales to the Brinkley-Douglas Company. The question was: "Now, in shipping to the Brinkley-Douglas Fruit Company, did you use to consign it to them?" and he answered: "No, sir; they advanced me the money, the pay was advanced, always before loading I had the money." But, as before stated, when he loaded the car herein he undoubtedly considered the transaction closed and that he virtually had the money, nothing being required except cashing the check at the bank, which was done the next morning.

3. It is next contended that there was no demand under section 689 of the Code of Civil Procedure. Appellants say: "It must be conceded in this case that the only demand made by plaintiff on Cornell, as sheriff, was that contained in the telegram sent on February 28, 1912, which was as follows:

" 'S. C. Cornell,
    " 'Sheriff, Merced, Cal.
    " 'Understand you have attached car sweet potatoes P. F. E. thirty-nine thirty-five. We have paid for this car, what right have you to attach our goods. Turn car loose at once or will start proceedings for damages. Answer quick.
                              " 'Brinkley-Douglas Fruit Co.'

"This clearly falls far short of the demand required by C. C. P. 689, and which the sheriff must receive before he would be justified in relinquishing the property."

But there was a written notice of demand, as shown by the transcript, which it is not denied was received by the sheriff prior to the sale of the attached property. There was, also, a purported indemnity bond given to the sheriff which also appears in the record.

The said notice and demand contained all that is required by section 689 of the Code of Civil Procedure. The affidavit, however, was made by Duarte instead of the corporation. It appears, though, in the claim itself that it was made on behalf of the Brinkley-Douglas Fruit Company. It may be that, strictly speaking, Duarte was not authorized to make the claim for respondent, but as far as the sheriff was concerned he was put upon the same notice as though the affidavit had been made by the Fruit Company itself. As far as the question of agency is concerned, moreover, it is not an unreasonable view that Duarte was acting as the agent of the company throughout the entire transaction, including the purchase of the potatoes. Indeed, his daughter testified that they were purchased for the Brinkley-Douglas Fruit Company. However, the case seems to have been tried upon the theory that Duarte was the purchaser and then the vendor, and we have so regarded it. But the claim and notice provided in said section is for the protection of the sheriff that he may release the property or require an indemnity bond (*Dubois* v. *Spinks*, 114 Cal. 289, [46 Pac. 95]), and when the sheriff does not object to the sufficiency of the notice, but demands of the creditor that he indemnify him against loss and an undertaking is given without objection on the part of the creditor, the sheriff waives any question as to the sufficiency of the notice or demand. (*Kellogg* v. *Burr*, 126 Cal. 38, [58 Pac. 306].)

There is some contention in the closing brief of appellants that the indemnity bond received in evidence was not shown to have been given in this particular case, but no such objection was made when it was offered and, besides, we are satisfied with the proof on that point. It is also claimed that the bond was and is a nullity. There may be some question as to its sufficiency and validity, but the sheriff seemed to be satisfied with it. It was his own fault if he did not require a good bond, but, at any rate, he acted upon the claim and notice in behalf of the respondent and he should not now be heard to question the sufficiency of the demand.

4. We think conversion was the proper remedy. "Trover is a proper form of action against a sheriff who seizes or sells the property of one person under process against another." (35 Cyc. 1792.) This is necessarily implied, also, by the language of section 689 of the Code of Civil Procedure.

5. It may have been error for the court to allow the testimony as to the value of the potatoes at Pueblo, Colorado, but, if so, it was entirely without prejudice, for it is clear that the court in its finding was not influenced by such testimony and the value found was established by competent and material testimony, virtually without conflict.

6. There was no failure to find upon every material issue. The possession at the time of the attachment was not a vital consideration. In such action of conversion, the plaintiff is entitled to recover where he proves his ownership and right of possession together with the appropriation of the property by defendant. It is immaterial that the property may be at the time of conversion in the actual possession of a third party.

The court's findings as to the ownership and right of possession, as already set forth, render unimportant the issue of actual possession.

7. It is contended that the judgment against the administrator is erroneous in that it should have directed that it be paid in the due course of administration. (Code Civ. Proc., sec. 1504.) The point is, no doubt, well taken and the judgment in that respect should be corrected on appeal. (*Vance* v. *Smith,* 124 Cal. 219, [56 Pac. 1031].)

The foregoing includes all the reasons urged by appellants for reversal. We cannot avoid the opinion that they are more plausible than substantial, and that they should not avail to overthrow the conclusion of the lower court, which seems not

only legal, but also entirely just and equitable, in view of the undisputed fact that the potatoes were purchased with the money of respondent, and that there is no doubt of the good faith of the corporation in the transaction.

The judgment against the administrator is modified by adding thereto the following, "and that said judgment be paid in due course of administration," and as thus modified the judgment is affirmed as to both defendants, as is also the order denying the motion of each defendant for a new trial, respondent to recover its costs.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 9, 1917.