[Civ. No. 1924.    Third Appellate District.—April 17, 1919.]

## J. S. HENDERSON, Appellant, v. E. LAUER & SONS (a Corporation), Respondent.

[1] SALES—LOSS OF GOODS EN ROUTE—ASSUMPTION OF RISK.—The risk of loss or destruction of goods while en route from seller to purchaser is placed where the title resides.

[2] ID.—C. O. D. SHIPMENTS—PASSAGE OF TITLE—INTENT—PRESUMPTION.—Where goods are shipped C. O. D. and the bill of lading with draft attached is sent to the local bank of the purchaser, it will be presumed, in the absence of evidence showing a contrary intention, that the vendor did not intend that the ownership and right to the possession of the goods should pass to the purchaser until the draft was paid.

APPEAL from a judgment of the Superior Court of Modoc County.    Clarence N. Raker, Judge.    Affirmed.

The facts are stated in the opinion of the court.

J. T. Sharp for Appellant.

Jamison & Wylie for Respondent.

CHIPMAN, P. J.—It is alleged in the complaint that defendant "became indebted to R. F. Smith & Sons Company, Chicago, Illinois, in the sum of $471.31, lawful money of the United States, upon an express contract, for goods, wares and merchandise, sold and delivered to said defendant" at its special instance and request; that before filing the complaint, Smith & Sons Company assigned the said claim to plaintiff and that no part thereof has been paid.

The answer denies the averments of the complaint except that defendant herein admits that it is indebted to plaintiff in the sum of $31.91. The cause was tried by the court without a jury, and plaintiff had judgment for the sum of $31.91 and interest, amounting in all to the sum of $34. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

The controversy arises out of a shipment of goods by plaintiff's assignor to defendant of the value of $440.40, which

before delivery were destroyed by fire in the warehouse of the railroad company at Alturas.

Witness Ryerson, bookkeeper and credit manager of Smith & Sons Company, testified that the shipment was "C. O. D. draft with bill of lading attached, the original bill of lading and draft sent to the First National Bank of Alturas." On November 13, 1914, Smith & Sons Company wrote defendant as follows: "We are to-day shipping your C. O. D. order given to our Mr. Laney sending draft for $440.40 together with original invoice to the First National Bank at Alturas. When this draft is paid the bank will turn over the original invoice to you." It was admitted that the goods remained in the warehouse of the railroad company for seven months, and until destroyed, June 28, 1915. It appeared also that the bank at Alturas notified defendant that the draft and bill of lading were in its possession, soon after being received by it. In answer to a letter written by Smith & Sons Company, defendant of date July 22, 1915, wrote not to "be worried or alarmed over the claim of $440.40," and requesting that company to present the claim to the railroad company, which it did; and which was refused payment on the ground, as testified to by the railroad company's general manager, that the company was acting only in the capacity of a warehouseman.

In its letter the Smith & Sons Company also said that if the railroad company would not pay the claim, the E. Lauer & Sons Company would pay it. It is not contended that this promise was supported by any consideration or was otherwise than a voluntary offer. The letter went in as bearing upon the question as to the ownership of the goods while in storage. When on the witness-stand, Mr. Lauer, president of Lauer & Sons Company, was asked the question: "You understood all the time that these goods were being held for you and all you had to do was to go to the First National Bank and give your check and take the goods; isn't that the fact? A. Sure. Q. That was the way these goods were ordered C. O. D., were they not? A. Yes, sir." We find in the record no explanation of defendant's failure to take up the draft and call for the goods. Witness Lauer testified: "Q. Did you tell them [Smith & Sons Company] that you would not receive the goods for any cause from the time they were shipped to you, and ordered here in Alturas, until after

the fire? A. I do not think we had any correspondence over them at all." He testified that his company ordered the goods shipped through Mr. Laney, a salesman of Smith & Sons Company; that they came C. O. D. as ordered, and that his company had never repudiated the contract.

We find no evidence in the record from which the intention of the parties can be safely determined other than is to be found in the simple fact that the goods were ordered by defendant and that they were shipped to Alturas, C. O. D., as ordered, bill of lading with draft attached, sent to First National Bank, Alturas.

[1] We understand that the rule at common law is the rule in this state, viz., that the risk is placed where the title resides. (*Jue Yee* v. *Ch. Tetzen & Co.*, 12 Cal. App. 55, [106 Pac. 594]; *Hilmer* v. *Hills*, 138 Cal. 134, [70 Pac. 1080]; *Seeligson* v. *Philbrick* (C. C.), 30 Fed. 600.)

It was said in *Seeligson* v. *Philbrick, supra:* "Where a bill of exchange for the price of the goods is inclosed to the buyer for acceptance together with a bill of lading, if he refuse acceptance he acquires no right to the bill of lading, or the goods of which it is the symbol. Where a vendor deals with the bill of lading only to secure the contract price the property rests in the buyer on payment thereof. See Benjamin on Sales, 4th ed., sec. 339, and numerous cases cited." In *Dows* v. *National Exchange Bank,* 91 U. S. 618, [23 L. Ed. 214, see, also, Rose's U. S. Notes], it was said: "The transmission of the invoice of goods does not pass the property in the goods without an acceptance and payment of the draft drawn against them. An invoice is not a bill of sale, nor is it evidence of a sale. A bill of lading, taken, deliverable to the shipper's own order is inconsistent with an intention to pass the ownership of the cargo to the person on whose account it may have been purchased."

It was held in *Greenwood Grocery Co.* v. *Canadian County Mill etc. Co.*, 72 S. C. 450, [110 Am. St. Rep. 627, 5 Ann. Cas. 261, 2 L. R. A. (N. S.) 79, 52 S. E. 191], that even if the bill of lading provides for the delivery to the consignee, "yet if the consignor draws for the price attaching the bill of lading to the draft, this is sufficient evidence of his intention to reserve title and right of possession until the draft is paid and the consignee is not entitled to the goods until payment." Unless rebutted by evidence to the contrary, Mr.

Benjamin says the fact of making the bill of lading deliverable to the order of the vendor is almost decisive to show his intention to reserve the *jus disponendi* and prevent the property from passing to the vendee." (Benjamin on Sales, 7th ed., sec. 379.)

In *Hilmer* v. *Hills, supra,* the court quoted with approval from *Sanborn* v. *Shepherd,* 59 Minn. 144, [60 N. W. 1089], as follows: "There being no agreement of the parties to the contrary, the law presumes the sale to have been made for cash; and, upon a sale for cash, payment of the purchase money and the delivery of the property are concurrent and mutually dependent acts. Neither party is bound to perform without contemporaneous performance by the other. The payment of the purchase money was a condition precedent to plaintiff's right of possession."

[2] We find nothing in *Ramish* v. *Kirschbraun & Sons,* 107 Cal. 659, [40 Pac. 1045], cited by appellant, controverting the rule above stated. Doubtless the parties may agree that title shall pass to the consignee or the purchaser of the goods upon delivery to the purchaser of the bill of lading with draft attached. The effect of a sale C. O. D. and shipment with bill of lading and draft attached, as shown, may, as Benjamin says, be rebutted by evidence to the contrary intention, as appeared in the cases cited by appellant, but we find no evidence in the record which warrants our holding that Smith & Sons Company intended that title should pass to defendant without first paying for the goods by taking up the draft.

The goods for which judgment was confessed were delivered to defendant and constituted a credit sale and the bill of lading stated "payable thirty days," whereas the bill of lading in question stated "payable C. O. D. draft with B/L First National Bank," and in no sense constituted a credit sale. We think it quite clear that the vendor did not intend that the ownership and right to the possession of the goods should pass to defendant until its draft was paid. We think that the loss of the goods should fall upon plaintiff.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.