[Civ. No. .3752.   Second Appellate District, Division One.—December 22, 1921.]

FRED WOLTZ, Respondent, v. E. F. HUTTON & COMPANY, etc., et al., Appellants.

[1] STOCK BROKERS—ORDER FOR PURCHASE OF STOCK—NATURE OF TRANSACTION — NONLIABILITY FOR CONVERSION.—Where plaintiff gave a firm of stock brokers a written order for the purchase of oil stock, and the order contained a provision that all purchases and sales were subject to the rules of the exchange where the order was executed, and the brokers contracted for the purchase of the stock on the New York stock exchange, whose rules provided that such contracts were not to be consummated until the day following that of the purchase, at which time the transaction was to be closed by the seller delivering the stock upon payment therefor by the purchaser, and on the day of the purchase the local brokers, after plaintiff refused to deposit more margin, resold the stock to the brokers through whom the purchase was made, the plaintiff never became the owner of the stock, since it was never delivered to his brokers, and they were not guilty of its conversion.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.   Reversed.

The facts are stated in the opinion of the court.

John A. Percy, Benjamin E. Page, Arthur C. Hurt and Eugene D. Williams for Appellants.

Maurice C. Sparling and Edward G. Deery for Respondent.

SHAW, J.—Action for the alleged conversion by defendants of certain oil stock owned by plaintiff.

Plaintiff had judgment, from which defendants appeal.

It appears that at the times in question defendants were engaged in the business of stock brokers, having offices in both the city of Los Angeles and the city of New York; that prior to August 7, 1919, they had, in acting for plaintiff, bought and sold stock for his account, as a result of which he on August 7th had on deposit with defendants the sum of $850, at which time he gave to defendants, at their Los Angeles office, a written order to buy for him fifty shares of Mexican Petroleum stock at the market price; that this order, containing a provsion that "it is understood and agreed that all purchases and sales made by us for you are subject to the rules, regulations and customs of the Exchange or Board of Trade where order is executed," was given by plaintiff to defendants' telephone operator, who immediately transmitted the same by wire to defendants' New York office, which executed with the sellers, Carlisle, Mellick & Company, who were New York stock brokers, a contract for the purchase at $181 per share; that the execution of the order in accordance with his instructions was promptly reported to plaintiff; that later, on the same day, defendants' manager, upon learning of the matter, notified plaintiff that the acceptance of the order was a mistake, for the reason that the margin deposited was insufficient to protect so large a deal, and demanded an additional deposit of $1,000, which plaintiff refused to make; that thereupon the manager told plaintiff they would sell the stock, and immediately, through defendants' New York office, sold the fifty shares of Mexican Petroleum stock at the then market price of $171 per share, which sale was made to the brokers through whom the purchase was made, namely, Carlisle, Mellick & Company, notice of which fact was given to plaintiff on the morning of the following day; that the price of the stock continued to depreciate, reaching a price of $163 per

share on August 21st, and thereafter the market price advanced to $264 per share on October 2, 1919.

Plaintiff, claiming that, as provided in section 3336 of the Civil Code, he had prosecuted his action with reasonable diligence, sought recovery of the difference between the value of the property at the date of the alleged conversion, to wit, August 7, 1919, and the highest market value thereof prior to the commencement of the action on December 19, 1919.

The court, upon sufficient evidence, found the action had been prosecuted with reasonable diligence, and, as prayed for, gave judgment for plaintiff, as provided in section 3336 of the Civil Code, for the difference between the price at which the stock was purchased and the highest market price, which on October 2d was $264 per share. That such arbitrary rule fixing the measure of damages for conversion of personal property is applicable to the case seems to be well settled by the decisions of this state. (See *Dent* v. *Holbrook,* 54 Cal. 145; *Fromm* v. *Sierra Nevada S. M. Co.,* 61 Cal. 629; *Potts* v. *Paxton,* 171 Cal. 493 [153 Pac. 957].)

In support of the judgment the court found that at 12:30 o'clock P. M. on August 7, 1919, plaintiff was the owner of fifty shares of Mexican Pretroleum stock of the value of $9,050, which said shares were then in the possession of defendants; that on said day and at said time defendants wrongfully converted said shares of stock to their own use. Appellants' chief contention is that such findings are not supported by the evidence, for the reason that there is no evidence that plaintiff was the owner of the stock in question, or that the same was at any time in the possession of defendants.

[1] It appears from the undisputed evidence that plaintiff in writing stipulated that the purchase of the stock ordered should be subject to the rules, regulations, and customs of the stock exchange where the order was executed; that the purchase was made on the New York stock exchange, the rules, regulations, and customs of which provided that such contracts were not to be consummated until the day following that of the purchase, at which time the transaction was to be closed by the seller delivering the stock upon payment therefor by the purchaser. In accordance with these rules and customs, defendants as agents of plaintiff, on August 7th, entered into the contract with Carlisle,

Mellick & Company, whereby the latter agreed that on August 8th they would deliver to defendants fifty shares of stock upon payment in cash therefor. Defendants, however, never paid for the stock, without which no title or right to possession was acquired. (*Hilmer* v. *Hills,* 138 Cal. 134 [70 Pac. 1080].) No stock was ever delivered to them, without which the doctrine announced in *Markham* v. *Jaudon,* 41 N. Y. 235, as to the rights of a pledgor of stock bought on margin, is inapplicable. The contract, clearly executory in its nature, was never executed, for the reason that defendants, as plaintiff's agents, whether rightfully or wrongfully, is immaterial, refused to consummate the deal made for their principal with Carlisle, Mellick & Company, but instead, on the day of the purchase, sold to them a like number of shares of stock at $171 per share, the effect of which was by mutual consent to rescind and cancel the contract, in consideration of which defendants paid to Carlisle, Mellick & Company the difference in price of the stock as purchased and that at which it was sold. Obviously, if defendants acquired no title or right to possession of the stock, plaintiff could have, as against them, neither title nor right of possession, and hence he could not maintain an action for the conversion of the same.

The agreement made by defendants with Carlisle, Mellick & Company was an executory contract which, subject to the payment therefor, contemplated the delivery at a future time of the stock so agreed to be purchased. This payment was not made and the stock was never delivered, and hence, as defendants never acquired the stock or right thereto, they could not be guilty of its conversion. (*Cardinell* v. *Bennett,* 52 Cal. 476; *Yukon River etc. Co.* v. *Gratto,* 136 Cal. 538 [69 Pac. 252]; *Clarkson* v. *Stevens,* 106 U. S. 505 [27 L. Ed. 139, 1 Sup. Ct. Rep. 200, see, also, Rose's U. S. Notes]; *Hilmer* v. *Hills, supra.*)

The judgment is reversed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1922.

All the Justices concurred, except Sloane, J., and Lennon, J., who were absent.