[Civ. No. 13967. Second Dist., Div. One. May 25, 1943.]

ANDRES ALONSO et al., Respondents, v. E. C. BADGER, Appellant.

Paul D. Holland and Edward Flam for Appellant.

Francis B. Cobb and Charles M. Walker for Respondents.

WHITE, J.—Plaintiffs commenced this action against defendants to recover the value of some 548 head of lambs allegedly sold for the sum of $2,740. For reasons that will hereinafter appear, defendant Stanford filed a cross-complaint wherein he joined one John Montes as a party. The issues framed by the cross-complaint are not before us on this ap-

peal for the reason that cross-defendant Montes defaulted and judgment was entered against him and in favor of defendant and cross-complainant Stanford for $2,590. At the trial upon the issues raised by plaintiff's complaint and defendants' answer the court rendered judgment in favor of the former for $2,740. From such judgment defendant E. C. Badger, doing business as Badger Livestock Commission Company (hereinafter referred to as Badger) alone prosecutes this appeal.

As to the factual background surrounding this litigation, the record discloses that appellant Badger is a licensed livestock commission broker operating at the Union Stockyards in Los Angeles. Defendant Stanford is a livestock dealer, carrying an account with appellant Badger and using the latter's brokerage facilities, which permitted him when purchasing livestock from various growers to execute a draft drawn on appellant Badger, on a printed form of draft furnished by the latter, with a bill of sale attached, wherein title to the livestock purchased by the defendant was conveyed to appellant Badger. The latter would pay the draft, receive the bill of sale, then in turn sell the livestock to a packing company; would receive payment from such packing company, after which payment he would charge the account of the broker Stanford with his commission, for the amount of the draft, trucking and other expenses, and then credit his account with the amount realized from the sale to the packing company.

Respondents herein are sheep growers in the vicinity of Tia Juana, Mexico.

In narrating the testimony with reference to the particular transaction with which we are here concerned, we shall set forth the evidence in a light most favorable to the findings made by the court and the judgment predicated thereon as we are required to do on appeal, where every intendment is in favor of the findings made. Bearing this rule in mind we think it may fairly be said that contained in the record is evidence that on May 8, 1941, defendant Stanford selected from the flocks of respondents 548 head of lambs. There is evidence that cross-defendant Montes and respondents Izuel and Alonso participated in such selection, but the presence of Montes upon this occasion is denied by respondent Izuel. The lambs were loaded on trucks and the parties met at the

border near Tia Juana, Mexico, to complete the transaction. A charge of $3 per head as duty was required to be paid to the customs authorities, and after defendant Stanford had telephoned appellant Badger's office the broker wired the requisite sum for payment of the duty charges. When the lambs were delivered at the border, defendant Stanford had a conversation with respondents Alonso and Izuel, at which conversation, according to Stanford, cross-defendant Montes was present. However, in view of what we shall have to say later in this opinion, it becomes important to here note that the presence of Montes at this conversation was denied by respondent Izuel, thereby creating a conflict in the evidence as to who were the actors upon this occasion. In such conversation defendant Stanford inquired as to whom he should make payable the purchase draft drawn on appellant Badger and after some discussion was told to make the draft payable to respondent Alonso. Thereupon Stanford executed and delivered a draft drawn upon appellant Badger in favor of respondent Alonso for the sum of $2,740. This draft was attached to a bill of sale signed by respondent Alonso in favor of appellant Badger, and the customs broker's receipt for the importation of the lambs was also made to appellant as purchaser.

There is in the record testimony that prior to taking delivery of the lambs defendant Stanford complained to cross-defendant Montes, but not to any of the respondents herein, concerning the quality of the livestock as "fat lambs" under the claimed terms of the contract, and finally upon Montes' insistence and because of his desire to earn a claimed 50c per head commission that would accrue to him and one of his associates under their contract with respondent growers, Montes agreed with Stanford that the latter should take some of the lambs that did not measure up to the contract regulations upon condition that Montes would share any loss Stanford might sustain on the transaction. As far as we can learn from the record, however, respondents according to their testimony were not parties to any such agreement.

The lambs were ultimately delivered to the pens of Swift & Company in Los Angeles for resale to that company on the basis of a previous agreement with them made by defendant Stanford. However, Swift & Company refused to accept the lambs because of their claimed inferior quality and

asked Stanford to remove them. Thereupon Stanford negotiated with Swift & Company's representative and finally induced the latter to accept the lambs at a reduced price which resulted in a net loss of $304 on the transaction. At about this time defendant Stanford communicated with appellant's office manager, advising her concerning the outstanding draft in favor of respondent Alonso for $2,740, and directed her not to pay it, but to make a settlement with cross-defendant Montes who would come to Los Angeles to receive the balance of the purchase price less the settlement to be agreed upon. Thereafter cross-defendant Montes did come to Los Angeles at the suggestion of defendant Stanford and a settlement was negotiated with him under the terms of which he assumed $150 of the $304 loss on the shipment. Appellant thereupon paid Montes in the sum of $2,590 representing the reduced purchase price of the lambs, less duty and less the settlement of $150. It is agreed that this money paid by appellant to cross-defendant Montes was not turned over by him to respondent sellers of the lambs, Montes claiming the right to certain offsets for debts allegedly due him, but admitting the receipt by him of the money.

The draft for $2,740 executed by defendant Stanford, drawn on appellant Badger and delivered to respondents at the border, was presented to appellant on May 10th and the latter declined to pay the same and it was returned unpaid.

■ Appellant first assails as unsupported by the evidence the court's findings that "at the time such lambs were sold to Swift and Company, Badger Livestock Commission Company knew that the draft they had delivered to Stanford, as hereinabove in the findings found, had been delivered to the plaintiffs as owners in payment for the said 548 head of lambs." While it is true as contended by appellant that the latter's office manager testified that the first she knew that the draft in favor of respondent Alonso had been made and delivered was after the lambs had been delivered to Swift & Company and when defendant Stanford telephoned and instructed her not to pay the defendant, nevertheless she also testified "Well, I had seen the original contract where he purchased them from Alonso, which was made with Montes, the original contract called for the purchase price of $8 per head, I don't remember that Stanford told me the number of head that he was buying, *but I knew he was buying them.*"

Furthermore, the evidence shows that defendant Stanford called appellant on the telephone, advised him of the number of lambs that had been purchased from respondents and appellant wired $3 per head to pay the customs duty on the 548 head of lambs. Also, the evidence clearly shows that it was the custom and practice of appellant and defendant Stanford to handle the purchase of livestock through Stanford negotiating the sale with stock growers and, as was done in this case, drawing a draft upon appellant with bill of sale attached thereto vesting title in appellant. A finding can not be overthrown on appeal unless to the appellate tribunal it is very plain that the conclusion reached can not be supported upon any rational view of the testimony. Such is not the case here.

Appellant's next contention that the court's finding that cross-defendant John Montes was not the agent of respondents finds no support in the evidence, is without merit. The claimed existence of any such agency, insofar as the sale and purchase of the lambs involved herein is concerned, is clearly negatived by the testimony of respondents Izuel and Alonso. Neither is appellant aided by the contents of a contract introduced in evidence as defendant's Exhibit "A" because such agreement referred not to the lambs with which we are here concerned but to certain other livestock; such contract was not signed by respondents, and at the most simply serves to establish the fact that respondents knew of an arrangement by which certain other livestock was to be sold by them to cross-defendant Montes and one Batiz for which respondents were to be paid in cash; but with reference to the sale of the lambs, the evidence both oral and documentary is overwhelming that cross-defendant Montes was not authorized to act as agent for respondents. We are satisfied, as was the trial court, that the transaction regarding the sale of the other livestock was separate and distinct from the transaction concerning the lambs. Perusal by us of the Uniform Sales Act embraced in sections 1738 et seq. of the Civil Code does not alter our conviction just stated. There is ample evidence to support the finding of the trial court that, by the terms of the contract as well as the usages of trade and the circumstances surrounding the instant transaction, it was the intention of the parties that the title to the lambs should pass in the manner and form asserted by respondents.

As the next ground of appeal it is urged by appel-

lant that the court erred in finding that the acts of appellant constituted a conversion of the lambs. In support of this claim appellant asserts that respondents herein "freely and voluntarily parted with possession of their lambs with full knowledge that they were to be made available by the buyer for resale or slaughter"; and that, therefore, the possession of the lambs by appellant was in all respects a lawful one from its very inception. But the aforesaid premise assumed by appellant is a fallacious one and contrary to the facts and the law. As we have heretofore pointed out, title to the lambs was to pass, according to the manifest intention of the parties, under the bill of sale which was attached to the draft drawn by defendant Stanford on appellant. Since the draft was not paid, title remained in respondents. This transaction was a "cash sale" as distinguished from a sale on credit. But one conclusion can be drawn from the facts of this case and that is that the bill of sale was to be withheld from appellant by respondents and to accompany the draft drawn on the firm. Such being the clear intention of the parties, it follows as a matter of law that no title in the lambs could pass to appellant until by honoring the draft he had paid the "cash" for the livestock. It being the rule that upon a sale of goods of cash on delivery the title and right to possession remain in the vendor until the price is paid, the refusal of appellant to pay the draft resulted in his acquiring no title to the lambs which he could convey to Swift & Company or to anyone else (*Hilmer* v. *Hills,* 138 Cal. 134, 139 [70 P. 1080]; *Stefani* v. *Southern Pac. Co.,* 119 Cal.App. 69, 73 [5 P.2d 946]; *Wong Foo* v. *Southern Pac. Co.,* 41 Cal.App. 42, 44 [181 P. 823]; *Giffen* v. *Selma Fruit Co.,* 5 Cal.App. 50, 53 [89 P. 855]). Payment of the draft was the principal condition upon which title to the lambs depended. ▮ The action of appellant in exercising dominion and control over the property of respondents and making a sale thereof without such owners' consent amounted to a conversion (*Lusitanian-American Development Co.* v. *Seaboard Dairy Credit Corp.,* 1 Cal.2d 121, 129 [34 P.2d 139]).

Appellant's final contention that he having received the lambs from his principal, defendant Stanford, was bound to pay the proceeds of the sale to cross-defendant Montes in accordance with Stanford's instructions, falls because it is predicated upon the erroneous premise that the lambs were received by appellant from Stanford. There is substantial

evidence in the record to support the statement that appellant received the lambs from respondent owners since the bill of sale was made direct to appellant and the livestock cleared through the customs authorities in appellant's name as consignee. As we have heretofore pointed out, defendant Stanford was not the agent of respondents. He was the agent of appellant in negotiating the sale and the latter was the purchaser of the lambs and the one who was to pay the consideration therefor.

For the reasons indicated the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1943.