[Civ. No. 28494.   Second Dist., Div. Two.   July 15, 1965.]

FRANCIS H. LEGGETT & COMPANY, Plaintiff, Cross-defendant and Respondent, v. COUNTY OF LOS ANGELES, Defendant, Cross-complainant and Respondent; F. E. BOOTH COMPANY, INC., Cross-defendant and Appellant.

Ekdale & Shallenberger, Chickering & Gregory, Arch E. Ekdale, Gordon P. Shallenberger and Bruce M. Casey, Jr., for Cross-defendant and Appellant.

Ryan & Traxler and Sidney Traxler for Plaintiff, Cross-defendant and Respondent.

Harold W. Kennedy, County Counsel, and DeWitt W. Clinton, Deputy County Counsel, for Defendant, Cross-complainant and Respondent.

FLEMING, J.—The issue here is whether the seller or the buyer of certain cannery equipment should bear the burden of the county property tax for the year 1962-1963.

On March 5, 1962, the tax assessment date under Revenue and Taxation Code, section 405, the transfer of the interest in the property from seller Booth to buyer Leggett was still unfinished, to a greater or lesser degree. Section 405 contains catchall language designed to assure that property in the county is assessed to somebody, and, accordingly, directs the assessor to assess taxable property in the county "to the persons owning, claiming, possessing, or controlling it at 12 o'clock meridian of the first Monday in March." ■ When the parties to a pending sale are unable to agree between themselves on an allocation of liability for property taxes, a court must analyze their transaction and determine which party had the assessable interest in the property on the taxable date. Here the trial court found that the seller Booth was liable for the tax and entered judgment accordingly for the county against Booth.

The pertinent history of this transaction shows that by written agreement of November 17, 1961, Booth agreed to sell, and Leggett to buy, certain canning machinery and canning equipment in a canning factory leased by Booth in Long Beach, California. Paragraph 3 of their agreement provided for a closing on December 29, 1961, at the offices of Seeman Brothers, Leggett's parent company in New York. At the closing three things were to take place: (a) Booth was to deliver a bill of sale, (b) Leggett was to deliver 5,000 shares of Seeman Brothers stock as consideration, (c) Booth was to deliver a letter agreeing to hold the shares for investment. Paragraph 10 of the agreement provided: "The risk of loss or damage to the said premises by fire or otherwise until delivery of the deed is assumed by Seller."

On December 28, 1961, the closing was extended to January 15, 1962. Thereafter Leggett and Booth agreed to enter an amendment extending the closing to March 1, 1962. On March 1 Booth telegraphed Leggett in New York that it had signed the amendment that day and airmailed it to New York.

Paragraph 3 of the amendment provided that delivery of the three items specified in the original agreement, that is, the bill of sale, the stock, and the investment letter, would take place at the closing on March 1, 1962. Paragraph 6 of the amendment changed paragraph 10 of the original agreement to read: "The risk of loss or damage to the said premises by fire or otherwise until *the closing* is assumed by the Seller." (Italics added.) The amendment also provided: "The Sale Assets *may* be removed from said plant at any time after the date hereof and *upon removal* such assets shall constitute the property of the Buyer irrespective of whether a bill of sale has yet been delivered and irrespective of whether the closing has taken place." (Italics added.) This latter clause was inserted in the amendment because Leggett intended to ". . . dismantle and send the cannery to the Philippine Islands."

The closing did not take place on March 1, 1962. The three things to be done at the closing actually took place around March 16. The bill of sale was signed in San Francisco on March 16. The 5,000 shares of Seeman Brothers stock were received by Booth "after that middle of March date." The investment letter was dated March 16 and delivered at a later date. None of the equipment was removed from the plant until October 1962.

From this statement of facts it appears that the critical elements of the sale involved (1) delivery by Booth of a bill of sale, (2) delivery by Leggett of 5,000 shares of stock, and (3) delivery by Booth of an agreement that it would hold the stock as an investment. None of these acts took place until March 16, 1962. We conclude that until that time the assessable interest in the property remained in Booth.

The fact that the buyer had an option to acquire the assets earlier by removing them is, in our view, ineffective to change title unless acted upon. In this case no action was taken under this option.

Our conclusion is fortified by the conduct of the parties themselves in allocating the risk of loss. Their agreement provided for assumption of the risk of loss by the seller until the closing. Pertinent is Civil Code, section 1742, which provides: "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, . . ." The general rule is that risk of loss

follows title. (*Henderson* v. *E. Lauer & Sons,* 40 Cal.App. 696 [181 P. 811].)

▮ We think the trial court was correct in placing the assessable interest on seller Booth.

Judgment affirmed.

Roth, P. J., and Frampton, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.